**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| **STATE OF TEXAS**, <br><br> *Plaintiff,* <br><br> **v.** <br><br> **ALEJANDRO MAYORKAS**, in his official capacity as Secretary of Homeland Security; **DEPARTMENT OF HOMELAND SECURITY**; **UR MENDOZA JADDOU**, in her official capacity as Director of the United States Citizenship and Immigration Services; **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES**; and **JOSEPH R. BIDEN**, in his official capacity as President of the United States, <br><br> *Defendants.* | Case No. 6:23-cv-00001 <br><br> Hon. Drew B. Tipton |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
FOR LACK OF JURISDICTION AND IMPROPER VENUE**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

I.   Public-Charge Statute and Policies ..................................................................... 2

II.   Litigation History ............................................................................................ 5

LEGAL STANDARD ................................................................................................. 6

SUMMARY OF ARGUMENT ................................................................................... 6

ARGUMENT ............................................................................................................. 7

I.   Texas Lacks Standing. ....................................................................................... 7

    A.   Texas has not suffered a cognizable injury. ................................................... 7

    B.   Texas has not demonstrated traceability or redressability. ..................................... 10

II.   Venue Is Improper. .......................................................................................... 12

    A.   Granting states universal residency for purposes of § 1391(e) is
         irreconcilable with precedent .................................................................... 13

    B.   The interests of justice favor dismissal. ....................................................... 17

CONCLUSION ......................................................................................................... 18

## TABLE OF AUTHORITIES

CASES

*Alabama v. Army Corps of Eng'rs*,
   382 F. Supp. 2d 1301 (N.D. Ala. 2005) ................................................................. 15

*Arizona v. Biden*,
   40 F.4th 375 (6th Cir. 2022) ........................................................................ 7, 8

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
   571 U.S. 49 (2013) .................................................................................. 12

*Atlanta & Florida Railroad Co. v. Western Railway Co. of Alabama*,
   50 F. 790 (5th Cir. 1892) ........................................................................... 16

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018) ....................................................................... 15

*California v. Texas*,
   141 S. Ct. 2104 (2021) ...................................................................... 7, 10, 11

*CASA de Maryland, Inc. v. Trump*,
   971 F.3d 220 (4th Cir. 2020),
   *vacated for reh'g en banc*, 981 F.3d 311 (4th Cir. 2020) ......................................... 2

*Chitimacha Tribe of Louisiana v. Harry L. L. Co.*,
   690 F.2d 1157 (5th Cir. 1982) ...................................................................... 18

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................................................................... 7, 9, 10

*Coates v. SAIA Motor Freight Line, LLC*,
   2020 WL 1812020 n.4 (N.D. Miss. Apr. 8, 2020) .................................................. 18

*Cook Cnty. v. Wolf*,
   498 F. Supp. 3d 999 (N.D. Ill. 2020) ............................................................. 4, 11

*Cook Cnty. v. Wolf*,
   962 F.3d 208 (7th Cir. 2015) ..................................................................... 3, 10

*E.T. v. Paxton*,
   41 F.4th 709 (5th Cir. 2022) ......................................................................... 9

*El Paso Cnty. v. Trump*,
   982 F.3d 332 (5th Cir. 2020) ................................................................... 11, 12

*Fla. Nursing Home Ass'n v. Page,*
    616 F.2d 1355 (5th Cir. 1980)
    *rev'd on other grounds, Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n,*
    450 U.S. 147 (1981) ........................................................................................................ 13

*Florida v. Mellon,*
    273 U.S. 12 (1927) ........................................................................................................... 9

*Florida v. United States,*
    2022 WL 2431443 (N.D. Fla. Jan 18, 2022) ................................................................. 15

*Flowers Indus., Inc. v. FTC,*
    835 F.2d 775 (11th Cir. 1987) ...................................................................................... 15

*Graham v. Dyncorp Int'l, Inc.,*
    973 F. Supp. 2d 698 (S.D. Tex. 2013) ........................................................................... 6

*Gulf Ins. Co. v. Glasbrenner,*
    417 F.3d 353 (2d Cir. 2005) ......................................................................................... 16

*Hooks v. Landmark Indus., Inc.,*
    797 F.3d 309 (5th Cir. 2015) .......................................................................................... 6

*Jenkins v. Bellsouth Corp.,*
    2002 WL 32818728 (N.D. Ala. Sept. 13, 2002) .......................................................... 18

*Life Partners Inc. v. United States,*
    650 F.3d 1026 (5th Cir. 2011) ........................................................................................ 6

*Louisiana v. Biden,*
    --- F.4th ---, 2023 WL 2780821 (5th Cir. April 5, 2023) ............................... 7, 10, 11

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................................ 7

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ........................................................................................................ 7

*Olberding v. Illinois Cent. R. Co.,*
    346 U.S. 338 (1953) ................................................................................................. 16, 17

*Psarros v. Avior Shipping, Inc.,*
    192 F. Supp. 2d 751 (S.D. Tex. 2002) ........................................................................... 6

*Reuben H. Donnelley Corp. v. F.T.C.,*
    580 F.2d 264 (7th Cir. 1978) ............................................................................. 14, 15, 17

*Schlanger v. Seamans*,
    401 U.S. 487 (1971) ............................................................................................ 14

*Seville v. Maersk Line, Ltd.*,
    53 F.4th 890 (5th Cir. 2022) ...................................................................... 17, 18

*Sinclair v. Kleindienst*,
    711 F.2d 291 (D.C. Cir.1983) ............................................................................ 19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .............................................................................................. 7

*Stafford v. Briggs*,
    444 U.S. 527 (1980) ............................................................................................ 14

*Standing Comm. on Discipline v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) ............................................................................ 18

*Stewart Organization, Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) .............................................................................................. 12

*Superior Oil Co. v. Andrus*,
    656 F.2d 33 (3d Cir. 1981) ................................................................................ 15

*Sure-Tan, Inc. v. NLRB*,
    467 U.S. 883 (1984) .............................................................................................. 9

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    581 U.S. 258 (2017) ................................................................................ 13, 14, 17

*Texas v. Dep't of Homeland Sec.*,
    --- F. Supp. 3d ---, 2023 WL 2457480 (S.D. Tex. Mar. 10, 2023) .......... 2, 13, 16, 18

*Texas v. United States*,
    555 F. Supp. 3d 351 (S.D. Tex. 2021) ................................................................ 9

*Texas v. United States*,
    40 F.4th 205 (5th Cir. 2022) ................................................................................ 9

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ................................................................................ 6

## STATUTES

8 U.S.C. § 1182(a)(4)(A) ................................................................................ 2, 3

8 U.S.C. § 1611 .............................................................................................. 3, 8

28 U.S.C. § 1391 ........................................................................................ 12, 13

iv

28 U.S.C. § 1406 ........................................................................................ 12, 17

RULES

Fed. R. Civ. P. 12 ........................................................................................ 2, 12

LEGISLATIVE MATERIALS

S. Rep. No. 87-1992 (1962) .............................................................................. 14

110 Stat. 3009-3674 (1996) ................................................................................ 3

Personal Responsibility and Work Opportunity Reconciliation Act,
    110 Stat. 2105 (1996) ................................................................................. 3

REGULATIONS

8 C.F.R. § 212.21(a) ......................................................................................... 5

*Field Guidance on Deportability and Inadmissibility on Public Charge Grounds,*
    64 FR 28,689, 28,689-91 (May 26, 1999) ..................................................... 3

*Inadmissibility on Public Charge Grounds,*
    84 FR 41,292 (Aug. 14, 2019) ........................................................... 1, 3, 4

*Inadmissibility on Public Charge Grounds; Implementation of Vacatur,*
    86 FR 14,221 (Mar. 15, 2021) ..................................................................... 4

*Public Charge Ground of Inadmissibility,*
    87 FR 55,472 (Sept. 9, 2022) .......................................................... *passim*

Defendants move to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(3).

## INTRODUCTION

Four years ago, the Department of Homeland Security (DHS) promulgated a rule expanding the bases upon which a noncitizen could be deemed likely to become a "public charge"—and therefore ineligible for admission or adjustment of status to lawful permanent resident (LPR). *See Inadmissibility on Public Charge Grounds*, 84 FR 41,292 (Aug. 14, 2019) (2019 Rule). But not even one of 47,555 nationwide applications for adjustment of status was ultimately denied because of the 2019 Rule. So, after extensive litigation (and the 2019 Rule's eventual vacatur), DHS reconsidered its policy and—following notice and public comment—promulgated a new rule that largely returned to its prior uncontested practice. *Public Charge Ground of Inadmissibility*, 87 FR 55,472 (Sept. 9, 2022) (2022 Rule). Texas now challenges the 2019 Rule's repeal and the 2022 Rule's promulgation. But its suit fails on threshold grounds.

First, Texas has not established standing, and cannot do so. Texas hypothesizes that, unlike the 2019 Rule, the 2022 Rule will increase the number of noncitizens who take advantage of public benefits. This is conjecture, as Texas's favored policy criteria did not ultimately lead to a single denial of adjustment of status. And even if the 2022 Rule were to lead to some hypothetical, small number of additional approvals for noncitizens who reside in Texas, federal law broadly makes those noncitizens ineligible for the relevant public benefits until five years *after* they become LPRs. Texas's claimed eventual fiscal

injury is thus obviously speculative.  And Texas cannot establish redressability because a prior final court judgment has vacated the 2019 Rule; setting aside the 2022 Rule would not lead to the 2019 Rule's resurrection.

Second, Texas's complaint makes no effort to establish that it has filed suit in the proper venue.  Although this Court has previously concluded that Texas is a "resident" in this division, *Texas v. Dep't of Homeland Sec.*, 2023 WL 2457480, at *3 (S.D. Tex. Mar. 10, 2023) (Tipton, J.), thorough analysis of relevant precedent belies that conclusion.

Accordingly, Texas's complaint should be dismissed.

## BACKGROUND

### I.   Public-Charge Statute and Policies

The Immigration and Nationality Act (INA) provides that "[a]ny alien who, … in the opinion of the [Secretary of Homeland Security] at the time of application for admission or adjustment of status, is likely at any time to become a public charge is inadmissible."  8 U.S.C. § 1182(a)(4)(A).[1]  As relevant here, DHS makes public-charge determinations when noncitizens seek admission at the border or when noncitizens in the United States apply to adjust their status to that of an LPR.  87 FR at 55,473 n.2.

A public-charge provision has appeared in federal law, in some form, since 1882, but Congress has never defined "public charge" or specified "the amount or type of public support that would render an alien inadmissible on that basis."  *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 230-31 (4th Cir. 2020), *vacated for reh'g en banc*, 981 F.3d 311

---

[1]  In this context, "adjustment of status" refers to the grant of lawful permanent residency.

(4th Cir. 2020). In 1996, however, Congress took two actions to ensure that noncitizens did not become public charges. First, Congress specified factors that the agencies must consider when making public-charge inadmissibility determinations. *See* 110 Stat. 3009-3674 (1996) (adding 8 U.S.C. § 1182(a)(4)(B)). Second, in the Personal Responsibility and Work Opportunity Reconciliation Act, 110 Stat. 2105 (1996) (PRWORA), Congress broadly forbade most noncitizens from receiving need-based public benefits and set a five-year bar after adjustment of status before LPRs could receive such benefits, *see* 8 U.S.C. §§ 1611(a), 1621(a), 1641(b); *see also id.* § 1613 (listing narrow exceptions for refugees, asylees, and veterans).

**Field Guidance.** In 1999, the Immigration and Naturalization Service—a predecessor to DHS—issued field guidance to advise officials on the application of the "public charge" provision. *See Field Guidance on Deportability and Inadmissibility on Public Charge Grounds*, 64 FR 28,689, 28,689-91 (May 26, 1999) (Field Guidance). It defined "public charge" to mean a noncitizen "who is likely to become … 'primarily dependent on the government for subsistence as demonstrated by either (i) the receipt of public cash assistance for income maintenance, or (ii) institutionalization for long-term care at government expense.'" *Id.* at 28,689.

**2019 Rule.** The Field Guidance was the "prevailing approach to public charge inadmissibility" until DHS proposed and, after notice and comment, finalized the 2019 Rule. *See* 84 FR 41292, 41295. Under this rule, "public charge" meant a noncitizen "who receives one or more public benefits [as designated in the rule] for more than 12 months in the aggregate within any 36-month period (such that, for instance, receipt of two

3

benefits in one month counts as two months)." *Id.* at 41,295. Further, unlike the Field Guidance, the 2019 Rule included Supplemental Nutrition Assistance Program (food stamps), most forms of Medicaid, and housing assistance within its definition of "public benefits." *Id.*

Various plaintiffs challenged the 2019 Rule in district courts across four circuits. 87 FR at 55,486 & n.26. "Following a series of preliminary injunctions and stays or reversals of those injunctions, the 2019 Final Rule was ultimately vacated nationwide by a partial final judgment entered by the U.S. District Court for the Northern District of Illinois." *Id.* at 55,486 & n.27 (citing *Cook Cnty. v. Wolf*, 498 F. Supp. 3d 999, 1004 (N.D. Ill. 2020)). DHS then removed the 2019 Rule from the Code of Federal Regulations to "implement[]" the district court's "judgment, *i.e.,* the vacatur of the … 2019 rule." *Inadmissibility on Public Charge Grounds; Implementation of Vacatur*, 86 FR 14,221 (Mar. 15, 2021).[2]

**2022 Rule.** After an Advance Notice of Proposed Rulemaking in August 2021 and a Notice of Proposed Rulemaking in February 2022, DHS published the 2022 Rule at issue here. The 2022 Rule defines "likely at any time to become a public charge" in a manner consistent with the Field Guidance, i.e., looking to whether the noncitizen is likely to become "primarily dependent" on the government as demonstrated by receipt of public cash assistance for income maintenance or long-term institutionalization at government expense. 87 FR at 55,636 (codified at 8 C.F.R. § 212.21(a)).

---

[2] States' efforts to intervene to defend the 2019 Rule were unsuccessful. *See* 87 FR at 55,486.

In promulgating this rule, DHS responded to numerous comments urging the agency to adopt a definition like the 2019 Rule's.  Among other things, DHS noted that the 2022 Rule "does not change eligibility for public benefits." 87 FR at 55,492.  DHS further reported that the 2019 Rule "ultimately did not result in a single denial of adjustment of status on public charge grounds." *Id.*  And DHS observed that, while neither rule revised eligibility for benefits, the 2019 Rule elicited confusion and "apparently resulted in widespread disenrollment effects among those who were not covered by that rule to begin with." *Id.*

## II.   <u>Litigation History</u>

Texas brings three claims under the Administrative Procedure Act (APA) challenging the 2019 Rule's repeal and the 2022 Rule's adoption. *See* ECF No. 1 ¶¶ 66-79. Count One asserts that the 2022 Rule's definition of "public charge" is inconsistent with the INA and PRWORA. *See id.* ¶¶ 66-68.  Count Two asserts that the 2022 Rule is arbitrary and capricious. *Id.* ¶¶ 72-74.  Finally, Count Three asserts that Defendants failed to satisfy their notice-and-comment obligations in repealing the 2019 Rule or adopting the 2022 Rule. *Id.* ¶¶ 77-78.  Texas asks this Court to "[h]old unlawful and set aside the 2022 Rule." *Id.* at 23.

## LEGAL STANDARD

Under Rule 12(b)(1), the Court must dismiss if it "lacks the statutory or constitutional power to adjudicate the case." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). Under Rule 12(b)(3), the Court may dismiss for improper venue. Where jurisdiction or venue is challenged, the plaintiff bears the burden of proof, *Texas v. United States*, 809 F.3d 134, 150 (5th Cir. 2015), and the Court "takes as true all of the allegations of the complaint and the facts set out by the plaintiff," *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011).

## SUMMARY OF ARGUMENT

Texas lacks standing to challenge DHS's 2022 Rule. That Rule does not change public-benefit eligibility and will not affect the State's fisc unless (1) DHS admits, or grants adjustment of status, to significantly more noncitizens using the revised criteria, (2) some of those people choose to reside in Texas, *and* (3) some of those residents ultimately obtain benefits after the expiration of the five-year statutory bar. This highly attenuated chain of events is too speculative to support injury-in-fact. And prior court orders stand in the way of Texas receiving redress through this lawsuit. Regardless, because Texas cannot establish that the statutory venue provision on which it relies grants it the right to seek relief in this district, dismissal is required.

**ARGUMENT**

## I.  <u>Texas Lacks Standing</u>

"A plaintiff has standing only if [it] can allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021).[3]  Texas fails at each turn.

### A.  **Texas has not suffered a cognizable injury.**

To establish an "injury in fact," a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). For an injury to be "concrete," it "must actually exist"—meaning it is "real" and "not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). And while standing is not limited to those who have already suffered harm, the imminence prong requires that any "threatened injury … be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  "[A]llegations of *possible* future injury are not sufficient."  *Id.* (cleaned up); *see Louisiana*, 2023 WL 2780821, at *3.

Texas makes no claim that the 2022 Rule directly regulates its conduct.  It does not allege, for instance, that the rule requires Texas to expand Medicaid eligibility. *Cf.*

---

[3] States have been granted "special solicitude" in particular circumstances making the traceability and redressability prongs easier to satisfy. *See Massachusetts v. EPA*, 549 U.S. 497, 520-21 (2007). That approach is unwarranted here because Texas is not claiming injury to peculiarly sovereign interests, but rather proceeds on a theory of "indirect fiscal burdens" from DHS's rule.  *Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022); *see Louisiana v. Biden*, --- F.4th ---, 2023 WL 2780821, at *5 (5th Cir. April 5, 2023) (rejecting special solicitude where challenged action did not have "direct effect on [states'] law or policy").

*Arizona*, 40 F.4th at 383.  Nor could it.  The 2022 Rule states that it "does not intend to decide or impact which categories of noncitizens are, or should be, eligible to receive public benefits," 87 FR at 55,500, as well as PRWORA's limitations on eligibility, *see* 8 U.S.C. §§ 1611(a), 1641(b).  Rather, Texas suggests that some unspecified number of people—who might be denied adjustment of status under Texas's preferred interpretation of "public charge," but not under the 2022 Rule—could, at some unknown date, obtain Medicaid benefits, impacting Texas's "social-welfare budgets." Compl. ¶¶ 61-62, 64.  In support, Texas describes the overall number of Texans who receive Medicaid and the amount of money Texas contributes to the program, apparently implying that some "otherwise inadmissible" individuals could be among the beneficiaries. *Id.* ¶ 62.  Texas's argument fails twice over.

First, given the 2019 Rule's effect, it is manifestly speculative whether the 2022 Rule will result in fewer applications being denied on public-charge grounds anywhere in the country, let alone in Texas.  As DHS explained, despite the "widespread collateral effects" on parties not subject to the public-charge ground of inadmissibility, "of the 47,555 [nationwide] applications for adjustment of status to which the [2019] rule was applied, DHS issued only three denials (which were subsequently reopened and approved) and two Notices of Intent to Deny (which were ultimately rescinded, after which the applications were approved)" based on a public-charge inadmissibility determination.  87 FR at 55,473.  There is no reason to assume that DHS's 2022 Rule would create any appreciable population of people (let alone people in Texas) who would be eligible, five years down the line, for public benefits compared to Texas's preferred

policy.  And, tellingly, Texas's complaint offers nothing to the contrary, *see* Compl. ¶ 62, including no statistical or historical data suggesting Texas is likely to suffer any measurable effect from the 2022 Rule.[4]

The Supreme Court has expressly rejected standing based only on "objectively reasonable likelihood" as "inconsistent with [its] requirement that 'threatened injuries must be certainly impending to constitute injury in fact." *Clapper*, 568 U.S. at 410.  So has the Fifth Circuit. *See, e.g.*, *E.T. v. Paxton*, 41 F.4th 709, 715 (5th Cir. 2022).  Texas stretches "imminence" "beyond the breaking point," *id.* at 716, by asking the Court to accept, in the absence of plausible pleading and contrary to all available information, that the 2022 Rule might result in some vanishingly small number of additional individuals who might choose to reside in Texas and might seek public benefits after the statutory bar expires.

Second, even accepting Texas's speculative claims, its theory of harm still fails because it depends on an attenuated chain of events.  Specifically, for Texas to be injured in the way it claims, at least three things must happen:

1.  DHS must "predict" that this noncitizen is not likely to become a public charge at any time in the future based on criteria that the 2022 Rule altered, *see Cook Cty. v. Wolf*, 962 F.3d 208, 237 (7th Cir. 2020) (Barrett, J., dissenting);

---

[4] Texas's claim to standing fails for yet more fundamental reasons: such incidental effects on a state are not judicially cognizable injuries, *see Florida v. Mellon*, 273 U.S. 12, 18 (1927), and Texas has no judicially cognizable interest in the enforcement of federal law against third parties, *see Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984). Defendants recognize that this Court and the Fifth Circuit may have—at least implicitly—rejected these arguments, *see, e.g.*, *Texas v. United States*, 555 F. Supp. 3d 351, 373-76 (S.D. Tex. 2021); *Texas v. United States*, 40 F.4th 205, 216-17 (5th Cir. 2022), and they are now before the Supreme Court, *see* Brief for Petitioners at 11-20, *United States v. Texas*, No. 22-58 (U.S. Sept. 12, 2022). Defendants therefore preserve these arguments for appellate review..

2. The noncitizen become an LPR *and* wait at least five years *after* becoming an LPR to be eligible to apply for public benefits; and

3. The noncitizen must choose to reside in Texas, be eligible for Medicaid, and apply for and receive such benefits to which Texas contributed.

But the Supreme Court and the Fifth Circuit have repeatedly rejected such highly attenuated standing claims, which depend on "speculative chain[s] of possibilities." *Clapper*, 568 U.S. at 414; *see, e.g.*, *Louisiana*, 2023 WL 2780821 at *4-6. Where, as here, the asserted harms "rest on speculation about the decisions of independent actors" far in the future, a plaintiff must provide more than mere conjecture about how such decisions will be made. *Clapper*, 568 U.S. at 414.

Because Texas cannot plausibly allege whether even a *single* person will become a Texas resident under the 2022 Rule—much less whether such a person will seek public benefits five years in the future—it has utterly failed to allege a concrete injury-in-fact.

**B.   Texas has not demonstrated traceability or redressability.**

The Supreme Court has also recognized that "where a causal relation between injury and challenged action depends upon the decision of an independent third party (here an individual's decision to enroll in, say, Medicaid), 'standing is not precluded, but it is ordinarily substantially more difficult to establish.'" *California*, 141 S. Ct. at 2117. To satisfy the traceability prong in these circumstances, plaintiffs must "show at the least 'that third parties will likely react in predictable ways.'" *Id.* Likewise, to satisfy the redressability prong, plaintiffs must "show 'a substantial likelihood' that the requested relief will remedy the alleged injury in fact.'" *El Paso Cnty. v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020). Texas cannot do either.

First, as described above at 10, the road from the 2022 Rule to Texas's injury is long and winding. Staying on track requires independent third parties to make particular decisions: First, a noncitizen must apply for adjustment of status to that of an LPR, and a DHS official must make a decision under the 2022 Rule that he would not have made under the 2019 Rule, even though none of the 47,555 applications for adjustment of status considered under the prior rule were ultimately denied. 87 FR at 55,492 & 55,506. Then, years after receiving LPR status, the noncitizen must apply and receive Medicaid benefits in Texas. Texas has provided no allegations suggesting that any of these actions is a predictable effect of the 2022 Rule. And without them, Texas has not satisfied the second standing prong. *See, e.g.*, *California*, 141 S. Ct. at 2119; *Louisiana*, 2023 WL 2780821 at *5-6.

Second, Texas's requested relief—even if granted—would not remedy its purported injuries. Contrary to Texas's suggestions, Compl. ¶ 55, the 2022 Rule did not replace the 2019 Rule; at the time DHS promulgated the 2022 Rule, the 2019 Rule was vacated, *see Cook Cnty.*, 498 F. Supp. 3d at 1009-11, and DHS was making "public charge inadmissibility determinations in accordance with the statute," which does not define the term, and the Field Guidance. 87 FR at 55,486; *see id.* at 55,501 (affirming that "this rule does not replace the 2019 Final Rule"). Texas never challenged the Field Guidance during the two decades in which it guided public-charge admissibility determinations, and it does not challenge it here. But that Guidance uses substantially the same definition of "public charge" as the 2022 Rule Texas is challenging. So, even if the Court were to set the 2022 Rule aside, the same legal standard would remain in effect, and Texas's

purported injuries would not be remedied.  Under these circumstances, Texas cannot demonstrate redressability.  *See, e.g.*, *El Paso Cnty.*, 982 F.3d at 343.

## II.    Venue Is Improper

Even if this Court were to find that Texas has standing, it should still dismiss this case for improper venue.

As part of its constitutional "power to make rules governing the practice" of federal courts, *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988), Congress has provided that a district court "shall dismiss"—or "if it be in the interests of justice, transfer"—a case laying venue in the wrong division or district.  28 U.S.C. § 1406; *see* Fed. R. Civ. P. 12(b)(3).  "This question—whether venue is 'wrong' or 'improper'—is generally governed by 28 U.S.C. § 1391."  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).  Under that statute, a civil action against the United States, its agencies, or officers may be brought in "any judicial district in which" either (1) plaintiff or (2) defendant "resides," or (3) where "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(e)(1).

Texas does not and cannot allege that Defendants reside in this district or that relevant events or omissions occurred here.  Compl.  ¶¶  13-21.  Defendants unquestionably reside in and around Washington, D.C., and promulgated the 2022 Rule there.  So Texas's only plausible basis for venue is its own residency as a plaintiff.  This Court has recently found Texas resides in this district because it is not an "entity with the capacity to sue and be sued," whose residency Congress limited in § 1391(c)(2) to its "principal place of business."  *Texas*, 2023 WL 2457480, at *3.  Defendants maintain that

§ 1391(c)(2) definitions apply to states.[5]  But regardless, a proper analysis of applicable precedent shows that venue is improper here.

### A.    Granting states universal residency under § 1391(e) is irreconcilable with precedent.

The Supreme Court has repeatedly admonished that, in interpreting the conditions that Congress imposed on where parties can file suit, judicial and legislative "history of the [venue] statutes provide[] important context."  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 263-64 (2017).  And here, that history shows that Texas cannot reside in this district for purposes of § 1391(e).

Courts have repeatedly held that, for purposes of the venue statute, *federal* government defendants do not reside in every judicial district in which an agency has an office.  *Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980), *rev'd on other grounds*, *Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981) ("The general rule in suits against public officials is that a defendant's residence for venue purpose[s] is the district where he performs his official duties.").  This construction makes sense in light of § 1391(e)'s origin.

Before Congress enacted that section, the venue statute provided no special rule for suing the federal government.  Rather, such suits had to be brought in Washington, D.C.  *Stafford*, 444 U.S. at 534; *see also* S. Rep. No. 87-1992 at 2786 (1962) (under prior venue

---

[5]  Under that definition, a state's residency, "if a plaintiff," lies "only in the judicial district in which it maintains its principal place of business"—i.e., its capital.  28 U.S.C. § 1391(c)(2).  Recognizing that this Court has recently rejected that construction, however, Defendants preserve the argument without repeating it at length.

statute, actions had to be brought "in the District of Columbia" even when the "administrative determinations involved [were] made not in Washington but in the field"). Congress passed § 1391(e) to ease the ability of private litigants to sue the federal government. *Stafford*, 444 U.S. at 534-35; *see also Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971) (Congress enacted § 1391(e) "to broaden the venue of civil actions which could previously have been brought only in the District of Columbia"). As courts subsequently observed, "there would have been little need for the subsections dealing with the specifics of where the cause of action arose, where the plaintiff resides, and where relevant real estate is situated, if" federal agencies were deemed to reside everywhere they had an office. *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978).

Courts have applied the same analysis for corporations. Prior to Congress expressly specifying the residence of corporate defendants as plaintiffs through its amendments to § 1391(c) in 1988, *Heartland*, 581 U.S. at 266–67, courts repeatedly rejected the argument that a *corporation* resides "in any judicial district in which it maintains an office" for purposes of § 1391(e), finding that "there is no legislative history to suppose that Congress also sought to redefine established concepts of residence." *Reuben*, 580 F.2d at 270; *see also Flowers Indus., Inc. v. FTC*, 835 F.2d 775, 777 (11th Cir. 1987) ("If Congress had wanted to extend the accepted meaning of residence for corporations in § 1391(e)(4), it would have said so."). Holding otherwise would "encourage forum shopping and would favor corporate plaintiffs over individual plaintiffs who have but one residence." *Reuben*, 580 F.2d at 270.

14

There is no basis to treat states differently. Like the United States, states are sovereign within their borders; like the United States and corporations, states may conduct business in multiple places and have "offices in most, if not all, judicial districts" within those borders. *Id.* at 267. Yet the history of § 1391(e) bears no indication that Congress intended to allow states to sue "in any district regardless of how remote that district's contact may be with the litigation." *Id.*; *see generally* S. Rep. 87-1992. Indeed, deeming Texas to be a resident everywhere within its borders would improperly conflate "the terms 'resides' and 'may be found'" for purposes of the venue statute—something courts caution against. *Superior Oil Co. v. Andrus*, 656 F.2d 33, 40 (3d Cir. 1981).

Tellingly, none of the cases that this Court identified as supporting Texas's residency in this district address the history of § 1391 or the anomaly that would result if states were treated differently from the federal government for purposes of residency. *See California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018); *Alabama v. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1328-29 (N.D. Ala. 2005); *Florida v. United States*, 2022 WL 2431443 (N.D. Fla. Jan 18, 2022). To the contrary, those courts merely assumed that states were residents everywhere based on "common sense." *Alabama*, 382 F. Supp. 2d at 1328-29. But statutory history and the Supreme Court's admonitions about interpreting venue provisions strictly foreclose such an assumption. *See Olberding v. Illinois Cent. R. Co.*, 346 U.S. 338, 340 (1953) ("The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction."). Respectfully, this Court should not follow cases that got the analysis wrong.

15

Nor, contrary to this Court's earlier conclusion, is this Court bound by the Fifth Circuit's dicta in *Atlanta & Florida Railroad Co. v. Western Railway Co. of Alabama*, 50 F. 790, 791 (5th Cir. 1892), for multiple reasons. *Texas*, 2023 WL 2457480, at *3. To start, the Fifth Circuit was not analyzing a state's residency, much less state residency for the purpose of § 1391(e)'s venue provisions which came seventy years later and made superseding changes. Rather, the Court was considering whether "a corporation created under the laws of Georgia, is ... a citizen of that state," and merely analogized corporations to state governments in passing. *Atlanta*, 50 F. at 791. Further, the Court's analysis was concerned with residence of a corporation for purposes of *personal jurisdiction*, not venue. *Id.* And those two concepts, while at times overlapping, are analytically distinct. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) ("It would be error ... to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries.").

In short, there is no indication that, in relaxing venue provisions for private plaintiffs, Congress was creating an even more expansive set of venue options for states. To the contrary, "[t]he venue statute was not intended to permit forum-shopping[] ... [or] cases far from the site of the actual controversy." *Reuben*, 580 F.2d at 267. Venue thus cannot lie in this division. *Heartland*, 581 U.S. at 263-64. To the extent Texas is unhappy with having to sue in its capital (or where Defendants reside), its remedies lie with Congress, not this Honorable Court.

B.     **The interests of justice favor dismissal.**

Concluding that venue does not lie in this district should put an end to this matter. As the Fifth Circuit has explained, "[w]here venue is improper, the district court should generally dismiss the case." *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022). To be sure, "the court retains discretion to transfer it to a proper venue if such a transfer would serve 'the interest of justice.'" *Id.* (quoting 28 U.S.C. § 1406). "Among the relevant considerations for determining whether transfer is in the interest of justice, courts examine the plaintiff's reasons for filing suit in the improper district in the first place and ask whether the 'plaintiff's belief that venue was proper was in good faith and reasonable.'" *Id.* at 894–95. But Texas does not satisfy that prong.

As this Court is aware, Texas has routinely filed certain types of cases against federal agencies in just a handful of single-judge divisions. *See Texas*, Defs' Supp. Br., ECF No. 74 at 2 (explaining that "all 28 of [Texas's] lawsuits against the federal government filed in Texas federal district courts have been filed in just seven Divisions ... including 18 lawsuits in Divisions where the case would necessarily be assigned to a single, pre-determined judge"). In that case, Texas explicitly admitted that it filed in this division to ensure that it would be heard by a particular judge. *See Texas*, ECF No. 69, Tr. 45-46:22-3 ("The case is being filed in Victoria, quite frankly, Your Honor, because of our experience with you."). Texas has thus "handpicked [a jurist] to decide the particular case or motion in question." *Jenkins v. Bellsouth Corp.*, 2002 WL 32818728, at *6 (N.D. Ala. Sept. 13, 2002). Irrespective of public perception, which this Court previously rejected as

a basis for transfer, *Texas*, 2023 WL 2457480, at \*7-\*8,[6] Texas's tactical decision cannot be squared with established notions of how federal courts should operate.

"Judge-shopping," courts have explained, "disrupts the proper functioning of the judicial system." *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1443 (9th Cir. 1995).  It does so by "contraven[ing] the very purpose of random assignment, which is to … enhance[e] public confidence in the assignment process." *Coates v. SAIA Motor Freight Line, LLC*, 2020 WL 1812020, at \*2 n.4 (N.D. Miss. Apr. 8, 2020); *accord Chitimacha Tribe of Louisiana v. Harry L. L. Co.*, 690 F.2d 1157, 1164 (5th Cir. 1982) (describing "judge shopping" as "devious" and in "bad faith").  Texas's repeated flouting of these principles, despite a rising tide of objections, is hard to characterize as "reasonable"—and is decidedly not in the interests of justice.  *Seville*, 53 F.4th at 894.

Dismissal, rather than transfer, is particularly appropriate here because there are no "procedural obstacles," such as lack of personal jurisdiction, that would "impede an expeditious and orderly adjudication" of this case elsewhere.  *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir.1983).  Other fora are available and Texas has plenty of opportunity to refile suit within the six-year limitations period.

## CONCLUSION

For these reasons, Texas's complaint should be dismissed for lack or jurisdiction or improper venue.

---

[6] Defendants do not abandon those arguments, but do not repeat them here.

18

Dated:  April 14, 2023                    Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General

                                          ALAMDAR HAMDANI
                                          United States Attorney

                                          BRIGHAM J. BOWEN
                                          Assistant Branch Director

                                          */s/ Alexander V. Sverdlov*
                                          Alexander V. Sverdlov (N.Y. Bar No. 4918793)
                                          Attorney-in-Charge / Admitted Pro Hac Vice
                                          Christopher A. Eiswerth (D.C. Bar 1029490)
                                          Admitted Pro Hac Vice
                                          Trial Attorney
                                          U.S. Department of Justice
                                          Federal Programs Branch, Civil Division
                                          1100 L St., N.W.
                                          Washington, D.C. 20005
                                          Tel: (202) 305-8550 / Fax: (202) 616-8460
                                          alexander.v.sverdlov@usdoj.gov
                                          christopher.a.eiswerth@usdoj.gov

                                          Lance Duke
                                          Assistant United States Attorney
                                          Southern District of Texas
                                          800 N. Shoreline Blvd., Ste. 500
                                          Tel: (361) 446-2890
                                          Fax: (361) 888-3200
                                          lance.duke@usdoj.gov

                                          *Counsel for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the total number of words in this motion, exclusive of the matters for omission, is 4,996 as counted by Microsoft Word.

*/s/ Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV
United States Department of Justice

20