UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 6:23-CV-00001 |
| | § | |
| ALEJANDRO MAYORKAS, et al., | § | |
|     *Defendants*. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF JURISDICTION AND IMPROPER VENUE**

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**AARON F. REITZ**
Deputy Attorney General for Legal Strategy

**CHRISTOPHER D. HILTON**
Chief for General Litigation Division

**JOHNATHAN STONE**
*Attorney-in-Charge*
Assistant Attorney General
Texas State Bar No. 24071779
Southern District of Texas Bar No. 635446
Johnathan.Stone@oag.texas.gov

**CHARLES K. ELDRED**
Special Counsel for Legal Strategy
Texas State Bar No. 00793681
Southern District of Texas Bar No. 20772
Charles.Eldred@oag.texas.gov

**RYAN D. WALTERS**
Deputy Chief, Special Litigation Division
Texas State Bar No. 24105085
Southern District of Texas Bar No. 3369185
Ryan.Walters@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4196
Facsimile: (512) 320-0667

***ATTORNEYS FOR PLAINTIFF STATE OF TEXAS***

## TABLE OF CONTENTS

Table of Contents .................................................................................................................. ii

Index of Authorities ............................................................................................................ iii

Introduction and Summary of the Arguments ..................................................................... 1

Arguments ............................................................................................................................ 2

    I.    Texas has standing. ................................................................................................ 2

        A.    Texas is entitled to special solicitude. ............................................................ 2

        B.    Texas has suffered a concrete and particularized injury that is fairly traceable to Defendants' actions and that will be redressed by a favorable decision. ......................... 4

            1.    Texas has suffered a concrete and particularized injury ............................... 4

            2.    Texas' injuries are fairly traceable to Defendants' actions. ......................... 8

            3.    Texas' alleged injuries will be redressed by a favorable ruling. .................. 9

    II.    Venue is proper. .................................................................................................. 11

        A.    The State resides in this District. ................................................................. 11

        B.    Texas chose a proper venue. ........................................................................ 12

Request to Amend ............................................................................................................. 13

Conclusion ......................................................................................................................... 13

Certificate of Service ......................................................................................................... 14

### INDEX OF AUTHORITIES

**Cases**

*Alabama v. Army Corps of Eng'rs*,
  382 F. Supp. 2d 1301 (N.D. Ala. 2005) ..................................................................12

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
  458 U.S. 592 (1982) ................................................................................................ 2

*Arizona v. Biden*,
  40 F.4th 375 (6th Cir. 2022) ....................................................................................3

*Atlanta & F. Ry. Co. v. Western Ry. Co. of Ala.*,
  50 F. 790 (5th Cir. 1892) ....................................................................................... 11

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) ................................................................................. 11

*City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*,
  992 F.3d 742 (9th Cir.) ........................................................................................... 9

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................ 4

*Cook Cnty., Illinois v. Wolf*,
  498 F. Supp. 3d 999 (N.D. Ill. 2020) ...................................................................... 9

*Dep't of Homeland Sec. v. New York*,
  141 S. Ct. 1370 (2021) ............................................................................................ 9

*Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*,
  760 F.3d 427 (5th Cir. 2014) .................................................................................10

*Florida v. United States*,
  No. 3:21-CV-1066, 2022 WL 2431443 (N.D. Fla. Jan. 18, 2022) .............................12

*Flowers Indus., Inc. v. F.T.C.*,
  835 F.2d 777 (11th Cir. 1987) ................................................................................12

*Lujan v. Defs. of Wildlife*,
  04 U.S. 555 (1992) .................................................................................................. 2

*Massachusetts v. EPA*,
  549 U.S. 497 (2007) ................................................................................................ 2

*Pennsylvania v. Trump*,
   351 F. Supp. 3d 791 (E.D. Pa. 2019) ..........................................................................................12

*Texas v. Biden*,
   20 F.4th 928 (5th Cir. 2021)................................................................................................... 3, 7

*Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2023 WL 2457480
   (S.D. Tex. Mar. 10, 2023) ........................................................................................................11

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015)............................................................................................ 2, 3, 4

*Texas v. United States*,
   40 F.4th 205 (5th Cir. 2022) ..................................................................................................... 4

*Texas v. United States,*
   50 F.4th 498 (5th Cir. 2022) ................................................................................................. 2, 3

*Texas v. United States*,
   606 F. Supp. 3d 437 (S.D. Tex. 2022).......................................................................................3

*Utah v. Walsh*,
   No. 2:23-CV-016-Z, 2023 WL 2663256 (N.D. Tex. Mar. 28, 2023) ......................................11

**Statutes**

14D Wright & Miller, FED. PRAC. AND PROC. JURIS. § 3815 (4th ed. 2022) .........................11

28 U.S.C. § 1391(e)(1)(C) ...............................................................................................................11

5 U.S.C. § 704......................................................................................................................... 2

**Other Authorities**

Antonin Scalia & Bryan A. Garner,
   *Reading Law: The Interpretation of Legal Texts* 334-35 (2012) .....................................................10

Bryan Baker and Sarah Miller,
   *Estimates of the Lawful Permanent Resident Population in the United States and the Subpopulation Eligible to Naturalize: 2022*, Population Estimates, DHS Office of Immigration Statistics
   (Sept. 2022).................................................................................................................................5

iv

Randy Capps et al.,
  *Anticipated "Chilling Effects" of the public-charge rule are real: Census data reflect steep decline in benefits use by immigrant families*, Migration Policy Institute (July 15, 2020) ............................... 5

Solis D, Manuel O.,
  *Trump's new public charge rule may have already scared thousands of Texas families off public health insurance,* Dallas Morning News (Jan. 30, 2020) .......................................................................... 6

**Regulations**

83 Fed. Reg. 41,292, 463 ................................................................................................. 4

86 Fed. Reg. 14,221 ..................................................................................................... 10

87 Fed. Reg. 55,505 .................................................................................................. 7, 8

87 Fed. Reg. 55,579 ....................................................................................................... 8

87 Fed. Reg. 55,602 .................................................................................................. 7, 9

87 Fed. Reg. 55,621 n.653 ............................................................................................ 5

87 Fed. Reg. 55,621 ................................................................................................. 4, 8

87 Fed. Reg. 55,631 ................................................................................................. 4, 5

Plaintiff, the State of Texas, submits this PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND IMPROPER VENUE, and respectfully offers the following in support:

### INTRODUCTION AND SUMMARY OF THE ARGUMENTS

Texas is entitled to special solicitude when establishing standing because it has a procedural right to challenge Defendants' action and because it has quasi-sovereign interest public charge determinations. Texas also meets every element of standing. It has suffered a concrete and particularized injury from the billions of dollars that Defendants' fiscal analyses showed that the states would save from the 2019 Rule due to disenrollment and foregone enrollment in public benefits. This alleged injury is fairly traceable to Defendants actions where Defendants' fiscal analyses showed a *causal connection* between the 2019 Rule and disenrollment and foregone enrollment. And, finally, Texas's alleged injuries can be readdressed, at least in part, by vacatur of both the 2022 Rule and the repeal of the 2019 Rule.

Defendants' argument that Texas only resides in its capital city has been rejected by every Court considering it and Defendants' remaining arguments are all beside the point because venue is proper.

This Court should deny TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND IMPROPER VENUE in its entirety.

1

**ARGUMENTS**

I.   **Texas has standing.**

   A.   **Texas is entitled to special solicitude.**

"States are not normal litigants for the purposes of invoking federal jurisdiction" and may be "entitled to special solicitude." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). When special solicitude is appropriate, a state can establish standing "without meeting all the normal standards for redressability and immediacy." *Id*. at 517-18 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992)). Standing will exist "if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id*. at 518.

"Special solicitude has two requirements: (1) the State must have a procedural right to challenge the action in question, and (2) the challenged action must affect one of the State's quasi-sovereign interests." *Texas v. United States*, 50 F.4th 498, 514 (5th Cir. 2022) ("*DACA*") (citing *Texas v. United States*, 809 F.3d 134, 151-52 (5th Cir. 2015) ("*DAPA*")). Texas easily meets both requirements for special solicitude. Quasi-sovereign interests are "not sovereign interests, proprietary interests, or private interests pursued by the State as a nominal party." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 602 (1982). Rather, they "consist of a set of interests that the State has in the well-being of its populace." *Id*. These include interests in "the health and well-being—both physical and economic—of its residents" and in "not being discriminatorily denied its rightful status in the federal system." *Id*. at 607.

First, the APA provides Texas with a procedural right to challenge repeal of the 2019 Rule and the adoption of the 2022 Rule. 5 U.S.C. § 704; *see also DAPA*, 809 F.3d at 152 ("In enacting

2

the APA, Congress intended for those suffering legal wrong because of agency action to have judicial recourse, and the states fall well within that definition." (cleaned up)).

Second, Texas has a quasi-sovereign interest in public charge determinations. The Fifth Circuit has held that that "[t]he importance of immigration policy and its consequences to Texas, coupled with the restraints on Texas' power to make it, create a quasi-sovereign interest." *DACA*, 50 F.4th at 516. Here, Defendants' public charge rules will have a major effect on the states' fiscs, causing billions of dollars in losses to the State from the administration and distribution of benefits to those who would otherwise disenroll or forego enrollment. Dkt. 1 ¶60-64. Texas must bear these costs, while simultaneously being unable to legislatively distinguish among those classes of impacted public beneficiaries without running afoul of federal preemption or the Equal Protection Clause. *See DAPA*, 809 F.3d at 153. Defendants' repeal of the 2019 Rule and adoption of the 2022 Rule greatly increases the class of people whom Texas law entitles to public benefits, which in turn pressures Texas to change its laws, thereby affecting a quasi-sovereign interest. *See Texas v. Biden*, 20 F.4th 928, 969 (5th Cir. 2021) ("*MPP*"), *rev'd and remanded on other grounds*, 142 S. Ct. 2528 (2022).

Defendants seek solace in the Sixth Circuit, relying on *Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022) for the proposition that special solicitude is inapt because Texas asserts "indirect fiscal burdens." Dkt. 22 at 7, n.3. What Defendants failed to disclose is that the *Arizona* decision, which is not binding precedent on this Court, acknowledged that it directly conflicted with a ruling from this very Court on the same question of law. *Arizona*, 40 F.4th at 385 (citing *Texas v. United States*, 606 F. Supp. 3d 437 (S.D. Tex. 2022) (Tipton, J.), *cert. granted before judgment*, 143 S. Ct. 51 (2022). And, importantly, this Court's ruling finding special solicitude for Texas when

3

challenging agency action impacting immigration policy was allowed to go into effect by the Fifth Circuit. *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022) ("*Enforcement Priorities*"). The Fifth Circuit recognized that its ruling conflicted with the *Arizona* decision but found that the split was easily explainable based on its prior precedent and the evidence of the fiscal impact to Texas contained in the record. *Id.* at 216. While that decision is currently before the Supreme Court, it, along with prior Fifth Circuit precedent, remain the law governing this case. Texas, just as in the *Enforcement Priorities* case, cannot legislate in the area of immigration policy at issue and, by Defendants' own fiscal analysis (see Section I.B.1, *infra*), will experience significant financial consequences as a result of Defendants' actions; consequently, Texas is entitled to special solicitude.

### B. Texas has suffered a concrete and particularized injury that is fairly traceable to Defendants' actions and that will be redressed by a favorable decision.

Standing requires "an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *DAPA*, 809 F.3d at 150 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).

#### 1. Texas has suffered a concrete and particularized injury.

Defendants originally estimated that the 2019 Rule would result in 2.5% disenrollment or forgone enrollment, which would save the states over a billion dollars annually. 83 Fed. Reg. 41292, 41463.

The 2022 Rule, relying on new research, concluded that the 2019 Rule would result in 3.1% in disenrollment or foregone enrollment, with an annual savings of over $1.6 billion to the states. 87 Fed. Reg. 55,621, 55,631. This was the *most conservative* estimate. *Id.* at 55,621. A host of studies between 2016 and 2020 estimated implementation of the 2019 Rule would result in disenrollment

4

or foregone enrollment rates ranging from 4.1% to as high as 48%. *Id*. Defendants ultimately settled on using 3.1% on the low end and 14.7% on the high end for their fiscal analysis. 87 Fed. Reg. 55,631. Defendants estimate that the states will save $6.25 billion annually using the 14.7% rate. *Id*.

Texas is the second largest state, both in geographic size and population. It spends approximately $30.8 billion annually distributing and administering public benefits to Texans. Dkt. 1 ¶60-62. Medicaid alone accounts for approximately 28% of Texas's annual budget. *Id*. at ¶62. The average Medicaid beneficiary costs Texas more than $9,000 annually. *Id*. at ¶48. Texas also has the third highest rate of legal permanent residents by initial or current state of residence. *See* Bryan Baker and Sarah Miller, *Estimates of the Lawful Permanent Resident Population in the United States and the Subpopulation Eligible to Naturalize: 2022*, Population Estimates, DHS Office of Immigration Statistics (Sept. 2022), https://www.dhs.gov/sites/default/files/2022-10/2022_0920_plcy_lawful_permenent_resident_population_estimate_2022_0.pdf.

Texas would save approximately $14.784 billion annually if it saw a corresponding 48% decrease in overall Medicaid enrollment due to the 2019 Rule. And it would save between $954.8 million and $4.528 billion annually if it saw a corresponding 3.1% to 14.7% decrease in overall Medicaid enrollment. Defendants also relied on a 2020 research letter reporting on a survey of Texans that found 11.6% had friends or family who had avoided public benefit programs over the past year because of the 2019 Rule. 87 Fed. Reg. 55,621 n.653 (citing Randy Capps et al., *Anticipated "Chilling Effects" of the public-charge rule are real: Census data reflect steep decline in benefits use by immigrant families*, Migration Policy Institute (July 15, 2020), https://www.migrationpolicy.org/news/anticipated-chilling-effects-public-charge-rule-are-real; *see also* Solis D, Manuel O., *Trump's new public charge rule may have already scared thousands of Texas families off public health*

*insurance,* Dallas Morning News (Jan. 30, 2020), https://www.dallasnews.com/news/immigration/2020/01/28/trumps-new-public-charge-rule-may-have-already-scared-thousands-of-texas-families-off-public-health-insurance/ ("When a controversial immigration proposal to restrict who gets permanent residency was unveiled two years ago, experts predicted a drop in the number of children using public health insurance. Now, Texas statistics show enrollment drops of 234,000 [individuals] over the past two years in public health care programs."). These monetary losses are measurable, concrete, and particularized injuries. Dkt. 1 ¶¶56-64.

Defendants, on the other hand, take the contradictory positions that their fiscal analyses were sufficient to justify adopting the 2022 Rule, but are too speculative and remote to be relied on by Texas for standing. Dkt. 22 at 7-10. Defendants argue that this Court should focus solely on the alleged fact that none of the applicants subject to the 2019 Rule who sought to change their immigration status were adjudged public charges. But this argument misses the mark.

First, this argument does not account for the number of individuals who were *denied entry* based on public charge determinations. Second, the denied applications number is not representative because the 2019 Rule was only briefly in effect due to court-imposed stays. Third, and most importantly, applicants who *would have* been denied on public charge grounds likely chose not to apply for a change in status in the first place because they could use the objective criteria contained in the 2019 Rule to determine that their applications would be denied. In other words, the best measure for the number of individuals who likely would have been denied a change in immigration status on public charge grounds under the 2019 Rule is the overall change in the number of applicants before and after Defendants proposed the 2019 Rule on October 10, 2018, as reflected below:

6

| Fiscal Year | Total Population Applying for Adjustment of Status |
|---|---|
| 2014 | 637,138 |
| 2015 | 638,018 |
| 2016 | 711,431 |
| 2017 | 763,192 |
| 2018 | 704,407 |
| 2019 | 600,079 |
| 2020 | 577,920 |
| 2021 | 726,566 |
| Total (FY 2014 – FY 2018) | 3,454,186 |
| 5-year average (FY 2014 – FY 2018) | 690,837 |

Table 8. Total Population that Applied for Adjustment of Status, FY 2014 to FY 2021.

Source: USCIS analysis of data provided by USCIS, Policy and Research Division (Jan. 10, 2022)

87 Fed. Reg. 55,602.

Defendants' own data shows an 18% drop in the number of applicants seeking to change their status between fiscal year 2018 and 2020. This decline in applications, even accounting for the pandemic in the latter half of fiscal year 2020, is directly attributable in whole or part to the 2019 Rule. 87 Fed. Reg. 55,505 ("DHS acknowledges that the 2019 Final Rule caused fear and confusion among U.S. citizens and noncitizens and had a significant chilling effect on the use of public benefits by noncitizens, even among those who were not subject to the rule and with respect to public benefits that were not covered by the rule.").

Finally, Defendants argue that Texas cannot show a cognizable injury unless and until it can identify the specific individuals who became public charges in Texas that would have otherwise been excluded under the 2019 Rule. Dkt 22 at 9-10. But the Fifth Circuit has rejected such a requirement when challenging broad immigration policies. *See MPP*, 20 F.4th at 971. Defendants further contend that this harm analysis cannot even begin for at least another five years

7

Case 6:23-cv-00001   Document 25   Filed on 05/12/23 in TXSD   Page 13 of 19

(conveniently this is a practical impossibility given the APA's six-year statute of limitations). Dkt 22 at 9-10. This argument is irrelevant because Texas' alleged harms include the savings it would have experienced from disenrollment and foregone enrollment in public benefits under the 2019 Rule—not solely the costs associated with those who may one day become public charges in the future who would've been excluded under the 2019 Rule. Dkt. 1 ¶¶56-62.

2.   **Texas' injuries are fairly traceable to Defendants' actions.**

Defendants argue that Texas cannot show that its alleged injuries are fairly traceable to the repeal of the 2019 Rule and adoption of the 2022 Rule because these injuries are dependent on the actions of independent third parties who may or may not apply for public benefits. Dkt. 22 at 11. But Defendants, in the 2022 Rule, concluded that there was a *causal connection* between the 2019 Rule and individuals disenrolling or foregoing enrollment in public benefits. *See, e.g.*, 87 Fed. Reg. 55,505. Defendants found the relationship between the 2019 Rule and disenrollment and foregone enrollment so compelling that it warranted changing national immigration policy through the adoption of the 2022 Rule. *Id.* at 55,579 ("This public charge rule intends to administer the statute faithfully and fairly, while avoiding predictable adverse and indirect consequences such as disenrollment or forgone enrollment by individuals who would not be subject to the public charge ground of inadmissibility in any event."). Yet, here, Defendants deny the existence of this causal connection because this relationship "depends upon the decision of an independent third party." Dkt. 22 at 10. Texas, in rebuttal, offers Defendants own analyses of the 2019 and 2022 Rules, which found that the 2019 Rule would result in increased disenrollment and individuals foregoing public benefits, 87 Fed. Reg. 55,621, 631, and found an 18% decline in applicants seeking to change their

status following announcement of the 2019 Rule (because they believed they would have been excluded on public charge grounds). *Id.* at 55,602.

### 3. Texas' alleged injuries will be redressed by a favorable ruling.

Defendants claim that a favorable ruling vacating the 2022 Rule would not redress Texas' alleged injuries because the 2019 Rule would still be vacated. Dkt. 22 at 11. In this, Defendants misrepresent through omission the history of the 2019 Rule. Dkt. 22 at 4 (citing *Cook Cnty., Illinois v. Wolf*, 498 F. Supp. 3d 999, 1004 (N.D. Ill. 2020)). The vacatur of the 2019 Rule was stayed by the Seventh Circuit. *Cook County v. Wolf*, No. 20-3150 (7th Cir. Nov. 19, 2020), ECF No. 21. The Supreme Court, meanwhile, granted review of a related challenge to the 2019 Rule. *Dep't of Homeland Sec. v. New York*, 141 S. Ct. 1370 (2021). "While obviously one can never fully predict how the Supreme Court is going to decide a case, the Supreme Court's earlier stays—combined with its later cert grant of a lower court decision at odds with those stays—did not bode well for opponents of the rule." *City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 992 F.3d 742, 747 (9th Cir.) (VanDyke, J., dissenting), *cert. granted in part sub nom. Arizona v. City & Cnty. of San Francisco*, 142 S. Ct. 417 (2021), *and cert. dismissed as improvidently granted sub nom. Arizona v. City & Cnty. of San Francisco, California*, 142 S. Ct. 1926 (2022). Suddenly, Defendants found themselves "in the awkward position of having a case teed up before the Supreme Court that it knew it was likely to win, but now really wanted to lose. So in the early hours of March 9, 2021, despite the Supreme Court having granted certiorari just two weeks prior in a related case… DHS in coordination with the plaintiffs moved to dismiss the Seventh Circuit appeal of the district court's vacatur of the rule." *Id*. The same day the Seventh Circuit granted the dismissal and issued the mandate. *Id*. Four days later Defendants issued a final rule without notice and comment or a

9

delayed effective date repealing the 2019 Rule, alleging that they were merely promulgating a rule that was already in effect due to the vacatur. 86 Fed. Reg. 14,221. This is the repeal of the 2019 Rule challenged by Texas.

Defendants' argument also ignores the fact that Texas is challenging both the adoption of the 2022 *and* the repeal of the 2019 Rule. Dkt. 1 ¶¶66-79. It is also incorrect because it assumes, wrongly, that vacatur of the 2019 Rule reinstates the 1999 field guidance that the former had replaced. Dkt. 22 at 11. The 2019 Rule explicitly superseded the field guidance. 84 Fed. Reg. 41,292 ("This final rule supersedes the 1999 Interim Field Guidance on Deportability and Inadmissibility on Public Charge Grounds."). Just as the "repeal or expiration of a repealing statue does not reinstate the original statute," Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 334-35 (2012) (explaining the "Repeal-of-Repealer Canon"), the vacatur of the 2019 Rule did not reinstate the superseded field guidance.

A favorable ruling for Texas would reset the parties to March 9, 2021, and require Defendants to comply with the APA notice-and-comment process if they wish to repeal the 2019 Rule, and require them to consider the savings to the states when adopting a new rule. *See Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*, 760 F.3d 427, 432 (5th Cir. 2014) (the redressability requirement is satisfied if a favorable decision will relieve a discrete injury—plaintiffs need not show that a favorable decision will relieve *every* injury).

To the extent Defendants contend that Texas will experience no benefit from reinstatement of a vacated rule, this contention is belied by their own data showing a marked decrease in applicants seeking to change their status and increased disenrollment and foregone

10

enrollment both prior to the adoption of the 2019 Rule and while it was the subject of court-imposed stays.

## II. Venue is proper.

### A. The State resides in this District.

Where the defendant is an officer or employee of the United States, a civil action may generally be brought in any judicial district where "the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1)(C).

It is well-settled precedent that "Texas resides everywhere in Texas." *Utah v. Walsh*, No. 2:23-CV-016-Z, 2023 WL 2663256, *4 (N.D. Tex. Mar. 28, 2023) (collecting cases); *see also* 14D Wright & Miller, FED. PRAC. AND PROC. JURIS. § 3815 (4th ed. 2022) ("A natural person resides in the district in which domiciled. An entity with capacity to sue and be sued resides, when litigating as a plaintiff, only in the judicial district in which it maintains its principal place of business. … corporate plaintiffs… reside where incorporated… A state is held to reside in any district within it.").

Defendants' argument that state plaintiffs can only reside in the district containing their capital city has been rejected by every court where they have made it. *Utah*, 2023 WL 2663256 at *4; s*ee also Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2023 WL 2457480, at *3 (S.D. Tex. Mar. 10, 2023) ("*Parole*") ("Texas resides at every point within the boundaries of this State, including the Victoria Division."); *Atlanta & F. Ry. Co. v. Western Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892) (a state government "resides at every point within the boundaries of the state[.]"); *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018) (rejecting argument that California resides only in the district where the state capital is located and holding that "a state with multiple

11

judicial districts 'resides' in every district within its borders"); *Alabama v. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1328–29 (N.D. Ala. 2005) ("Indeed, the absence of authority may be precisely because common sense dictates that a state resides throughout its sovereign borders and the idea has not previously been challenged…."); *Florida v. United States*, No. 3:21-CV-1066, 2022 WL 2431443, *2 (N.D. Fla. Jan. 18, 2022) (same); *Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 808–09 (E.D. Pa. 2019) (same), *rev'd on other grounds sub nom. Little Sisters of the Poor v. Pennsylvania*, 140 S. Ct. 2367 (2020).

Defendants argue that suits brought by Texas are analogous to suits involving federal public officials, Dkt. 22 at 13—but this argument was rejected almost twenty years ago in *Alabama*, 382 F. Supp. 2d at 1328 (noting that "[t]he Federal Defendants fail to grasp that the State of Alabama, not some government official, is the Plaintiff in this case."). Defendants' efforts to analogize state plaintiffs with corporations or the federal government defendants are easily distinguishable because, unlike with state plaintiffs, it was well-settled in 1962—when Congress enacted § 1391(e)—that a corporation resided only in its state of incorporation and that the United States resided in Washington, DC. *Flowers Indus., Inc. v. F.T.C.*, 835 F.2d 777 (11th Cir. 1987); *see also Florida*, 2022 WL 2431443 at *2.

Defendants accurately characterize the overwhelming legal authority weighing against them as "common sense," albeit they attribute a negative connotation to this conclusion (just as they paradoxically concluded the states saving money on public benefits is a negative factor).

## B.   Texas chose a proper venue.

Part B of Defendants' motion to transfer venue does not apply to this case because Texas chose a proper venue. Defendants correctly state that if venue is improper, the district court should

12

dismiss the case, unless transferring it (rather than dismissing it) would be in the interest of justice. But venue is proper, so the Court does not need to decide whether to dismiss or transfer this case.

Defendants cite authority that "[a]mong the relevant considerations for determining whether transfer is in the interest of justice, courts examine the plaintiff's reasons for filing suit in the improper district in the first place and ask whether the plaintiff's belief that venue was proper was in good faith and reasonable. But Texas does not satisfy that prong. (cleaned up, citation omitted)." Dkt. 22 at 17.

Texas does not have to satisfy "that prong" because Texas has not chosen an improper district. Texas has no "reasons for filing suit in the improper district" because it filed in a proper district. Texas's "belief that [this] venue [is] proper [is] in good faith and reasonable" is a correct belief because this is in fact a proper district. Plaintiffs' complaints that Texas has a history of choosing proper single-judge districts, and that Texas is "judge shopping," would only be potentially relevant if Texas had chosen an improper district and the court needed to decide whether to dismiss or transfer this case. Texas did not do so, so the arguments are beside the point.

## REQUEST TO AMEND

In the event this Court finds Defendants claims have merit, Texas requests leave to amend its complaint.

## CONCLUSION

Texas asks that this Court DENY DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND IMPROPER VENUE and for any further relief for which they may justly be entitled, including leave to amend their complaint, if necessary.

Respectfully submitted,

| | |
|---|---|
| **KEN PAXTON**<br>Attorney General of Texas | */s/ Johnathan Stone*<br>**JOHNATHAN STONE**<br>*Attorney-in-Charge*<br>Assistant Attorney General<br>Texas State Bar No. 24071779<br>Southern District of Texas Bar No. 635446<br>Johnathan.Stone@oag.texas.gov |
| **BRENT WEBSTER**<br>First Assistant Attorney General | |
| **GRANT DORFMAN**<br>Deputy First Assistant Attorney General | **CHARLES K. ELDRED**<br>Special Counsel for Legal Strategy<br>Texas State Bar No. 00793681<br>Southern District of Texas Bar No. 20772<br>Charles.Eldred@oag.texas.gov |
| **SHAWN COWLES**<br>Deputy Attorney General for Civil Litigation | |
| **AARON F. REITZ**<br>Deputy Attorney General for Legal Strategy | **RYAN D. WALTERS**<br>Deputy Chief, Special Litigation Division<br>Texas State Bar No. 24105085<br>Southern District of Texas Bar No. 3369185<br>Ryan.Walters@oag.texas.gov |
| **CHRISTOPHER D. HILTON**<br>Chief for General Litigation Division | |
| | Office of the Attorney General<br>General Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>Telephone: (512) 475-4196<br>Facsimile: (512) 320-0667 |
| | ***ATTORNEYS FOR PLAINTIFF STATE OF TEXAS*** |

### CERTIFICATE OF SERVICE

I certify that that on May 12, 2023, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Johnathan Stone*
**JOHNATHAN STONE**
*Attorney-in-Charge*
Assistant Attorney General

14