UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS<br>*Plaintiff*,<br><br>v.<br><br>ALEJANDRO MAYORKAS, et al.,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION No. 6:23-CV-00001 |

**PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION POST-*UNITED STATES V. TEXAS***

**ANGELA COLMENERO**
Provisional Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Acting Deputy Attorney General
  for Civil Litigation

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

**RYAN KERCHER**
Deputy Chief, General Litigation Division

**LEIF OLSON**
Chief, Special Litigation Division

**JOHNATHAN STONE**
*Attorney-in-Charge*
Assistant Attorney General
Texas State Bar No. 24071779
Southern District of Texas Bar No. 635446
Johnathan.Stone@oag.texas.gov

**CHARLES K. ELDRED**
Special Counsel for Legal Strategy
Texas State Bar No. 00793681
Southern District of Texas Bar No. 20772
Charles.Eldred@oag.texas.gov

**RYAN D. WALTERS**
Deputy Chief, Special Litigation Division
Texas State Bar No. 24105085
Southern District of Texas Bar No. 3369185
Ryan.Walters@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4196
Facsimile: (512) 320-0667

***ATTORNEYS FOR PLAINTIFF STATE OF TEXAS***

On June 23, 2023, the Supreme Court of the United States issued *United States v. Texas*, \_\_ S. Ct. \_\_, No. 22-58, 2023 WL 4139000 (U.S. June 23, 2023) ("*Enforcement Priorities*"), holding that Texas lacked standing to challenge the Biden Administration's Guidelines for immigration enforcement that prioritize the arrest and removal of certain noncitizens. *Enforcement Priorities* at *2.

On April 14, 2023, Defendants filed a motion to dismiss this case under Rule 12(b)(1), arguing that Texas lacked standing. ECF 22. Texas responded, ECF 25, and Defendants replied, ECF 32. After the Court handed down *Enforcement Priorities*, the parties requested a modification of the scheduling order to file supplemental briefing. ECF 33. The Court granted the request. ECF 34.

Texas now submits this PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION, and respectfully offers the following in support:

## ARGUMENT

**I. Monetary injuries caused by immigration policies still support standing, unless those policies concern "arrest and prosecution."**

In *Enforcement Priorities*, the Supreme Court held that, under the "fundamental principle" that "a citizen lacks standing to contest the policies of the prosecting authority when he himself is neither prosecuted nor threatened with prosecution," Texas lacked standing to challenge the Biden Administration's Guidelines for immigration enforcement that prioritize the arrest and removal of certain noncitizens. *Enforcement Priorities* at *2. "This case concerns only arrest and prosecution policies, and we therefore address only that issue." *Id*. at *8 n.5.

The Court noted, "To establish standing, a plaintiff must show an injury in fact caused by the defendant and redressable by a court order." *Id*. at *4 (citing *Lujan v. Defenders of Wildlife*, 504

U.S. at 560–561 (1992)). The Court did not dispute that Texas suffered injuries, noting, "The District Court found that the States would incur additional costs because the Federal Government is not arresting more noncitizens. Monetary costs are of course an injury." *Id*; *see also Cook Cnty., Illinois v. Wolf*, 962 F.3d 208, 218 (7th Cir. 2020) (finding that a county had standing to challenge the 2019 Public Charge rule because "[m]unicipalities generally have standing to challenge laws that result (or immediately threaten to result) in substantial financial burdens and other concrete harms." (citing *Dep't of Commerce v. New* York, 139 S. Ct. 2551, 2565 (2019) ("diminishment of political representation, loss of federal funds, degradation of census data, and diversion of resources" were sufficient to give states and municipalities standing to sue over the proposed inclusion of a citizenship question on the 2020 census); *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 110–11 (1979) (municipality had standing based on the effect of racial steering in housing on the municipality's tax base and social stability)); *see also Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 197 (2017) ("Here, we conclude that the City's claims of financial injury in their amended complaints—specifically, lost tax revenue and extra municipal expenses—satisfy the 'cause-of-action' (or 'prudential standing') requirement."); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) (an economic injury is the "quintessential injury upon which to base standing"); *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (to confer standing, such injury "need not measure more than an identifiable trifle").

But the *Enforcement Priorities* court found that Texas's monetary injuries nevertheless did not give Texas standing because "the alleged injury must be legally and judicially cognizable," which "requires, among other things, that the dispute is traditionally thought to be capable of resolution through the judicial process—in other words, that the asserted injury is traditionally

redressable in federal court." *Id*. (cleaned up). "The States have not cited any precedent, history, or tradition of courts ordering the Executive Branch to change its arrest or prosecution policies so that the Executive Branch makes more arrests or initiates more prosecutions. On the contrary, this Court has previously ruled that a plaintiff lacks standing to bring such a suit." *Id*.

The present case concerns neither arrest nor prosecution. It concerns Defendants' statutory obligation not to admit any inadmissible alien who, "in the opinion of the Attorney General [subject to subsections (a)(4)(B)–(E)] at the time of application for admission or adjustment of status, is likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A). Defendants are responsible for "appl[ying] the public charge ground of inadmissibility to applicants for admission at or between ports of entry and when adjudicating certain applications for adjustment of status," not as part of any arrest or prosecution. 87 Fed. Reg. 55,472, 55,473 n.2 (Sep. 9. 2022). Thus, the holding of *Enforcement Priorities* does not affect Texas's standing in this case.

Texas has alleged monetary injuries, and Defendants admit those injuries. ECF (Texas's response to MTD) 25 at 4-8. Texas has standing because at least some aliens will not be admitted, and some will not have their status adjusted, if the Court grants relief. Texas also has standing because Defendants' data shows a marked increase in disenrollment and foregone enrollment in public benefits prior to the challenged repeal of the 2019 Rule and adoption of the 2022 Rule. Granting relief would redress Texas's injuries.

Moreover, the *Enforcement Priorities* majority noted that "a plaintiff arguably could obtain review of agency non-enforcement if an agency 'has consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities.'" *Id*. at *7

4

(citing *Heckler v. Chaney*, 470 U.S. 821, 833 n.4 (1985)). The repeal of the 2019 Rule and adoption of the 2022 Rule (hereafter "The Public Charge Rules") is just such a complete abdication of Defendants' statutory responsibilities. The *Enforcement Priorities* majority also noted that "a challenge to an Executive Branch policy that involves both the Executive Branch's arrest or prosecution priorities and the Executive Branch's provision of legal benefits or legal status could lead to a different standing analysis." *Id.* (citing *Department of Homeland Security v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1906–07 (2020) (benefits such as work authorization and Medicare eligibility accompanied by non-enforcement meant that the policy was "more than simply a non-enforcement policy"); *Texas v. United States*, 809 F.3d 134, 154 (5th Cir. 2015) ("*DACA*") (nonprosecution is distinct from benefits)). Defendants admit that aliens affected by the Public Charge Rules receive benefits. "DHS will not consider the receipt of, or certification or approval for future receipt of, public benefits not referenced in 8 CFR 212.21(b) or (c), such as Supplemental Nutrition Assistance Program (SNAP) or other nutrition programs, Children's Health Insurance Program (CHIP), Medicaid (other than for long-term use of institutional services under section 1905(a) of the Social Security Act), housing benefits, any benefits related to immunizations or testing for communicable diseases, or other supplemental or special-purpose benefits." 87 Fed. Reg. at 55,476. In fact, one of the issues in this case is whether Defendants may ignore an alien's receipt of public benefits such as those listed above when deciding whether an alien is likely to be a public charge.

In any event, Defendants' motion to dismiss does not argue that Texas lacks standing because Texas is challenging their discretionary enforcement decisions, but even if it did, *Enforcement Priorities* would not support such an argument. To the contrary, it suggests that Texas

does have standing to challenge DACA, and similarly has standing to challenge the Public Charge Rules.

II.   **The *Enforcement Priorities* majority did not hold that Texas lacked standing because the prioritization policy had merely incidental effects on the State.**

In *Enforcement Priorities*, the United States argued that Texas lacked standing in two ways. Its first argument (taking up six and a half pages of its merits brief) was: "A Federal Policy's Incidental Effects On A State Do Not Qualify As Judicially Cognizable Injuries." United States Merits Brief[1] at 11–17. Its second, backup argument (taking up just over two pages of its merits brief) was: "A Plaintiff Lacks A Judicially Cognizable Interest In The Enforcement Of The Law Against Third Parties." *Id*. at 18–20. The Court agreed with the second argument—limited to arrests and prosecution, not *all* non-enforcement.

The Court neither agreed nor disagreed with the first argument. Its only acknowledgement of the first argument was in footnote 3—a footnote to citations supporting the statement: "[I]n both Article III cases and Administrative Procedure Act cases, this Court has consistently recognized that federal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or bring more prosecutions." The footnote reads:

> Also, the plaintiffs here are States, and federal courts must remain mindful of bedrock Article III constraints in cases brought by States against an executive agency or officer. To be sure, States sometimes have standing to sue the United States or an executive agency or officer. But in our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending. And when a State asserts, for example, that a federal law has produced only those kinds of indirect effects, the State′s claim for standing can become more attenuated. In short, none of the various theories of standing asserted by the States in this case overcomes the fundamental Article III problem with this lawsuit.

---

[1] https://www.supremecourt.gov/DocketPDF/22/22-58/237711/20220912201922622_22-58tsUnitedStates.pdf

6

*Enforcement Priorities* at *6 n.3 (citations omitted). But, although urged by the United States, the Court did not hold that Texas's claim for standing failed due to the Enforcement Priorities policy's "indirect effects on state revenues or state spending." It relied on lack of standing to challenge arrest and prosecution decisions instead. Whether a policy's "indirect effects on state revenues or state spending" can support a claim for standing is still an open question.

In any event, Defendants' motion to dismiss does not argue that Texas lacks standing because Texas challenges only indirect effects of the Public Charge Rule, but even if it did, *Enforcement Priorities* would not support such an argument.

### III. Even if Justice Gorsuch's concurrence had five votes, it would not help Defendants.

Justice Gorsuch, for himself and two other Justices, questioned the majority's holding, but would have ruled against Texas on redressability grounds. He noted that 8 U.S.C. § 1252(f)(1) provides that "'no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of' certain immigration laws, including the very laws the States seek to have enforced in this case," *Enforcement Priorities* at *11 (Gorsuch, J., concurring), that vacatur of the Enforcement Priorities policy would not redress Texas's injury, *id.*, and that the APA might not empower courts to vacate agency action, *id.* at *11–16 ("I do not pretend that the matter is open and shut.").

But Defendants make no such argument. Moreover, 8 U.S.C. § 1252(f)(1) does not apply to admissibility decisions, although it does apply to adjustment of status. In any event, Texas seeks vacatur, not injunction.

## CONCLUSION

Texas asks that this Court DENY DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION and for any further relief for which they may justly be entitled, including leave to amend their complaint, if necessary.

Respectfully submitted,

| | |
|---|---|
| **ANGELA COLMENERO** | */s/ Johnathan Stone* |
| Provisional Attorney General of Texas | **JOHNATHAN STONE** |
| | *Attorney-in-Charge* |
| **BRENT WEBSTER** | Assistant Attorney General |
| First Assistant Attorney General | Texas State Bar No. 24071779 |
| | Southern District of Texas Bar No. 635446 |
| **GRANT DORFMAN** | Johnathan.Stone@oag.texas.gov |
| Deputy First Assistant Attorney General | |
| | **CHARLES K. ELDRED** |
| **JAMES LLOYD** | Special Counsel for Legal Strategy |
| Acting Deputy Attorney General | Texas State Bar No. 00793681 |
|   for Civil Litigation | Southern District of Texas Bar No. 20772 |
| | Charles.Eldred@oag.texas.gov |
| **RALPH MOLINA** | |
| Deputy Attorney General for Legal Strategy | **RYAN D. WALTERS** |
| | Deputy Chief, Special Litigation Division |
| **RYAN KERCHER** | Texas State Bar No. 24105085 |
| Deputy Chief, General Litigation Division | Southern District of Texas Bar No. 3369185 |
| | Ryan.Walters@oag.texas.gov |
| **LEIF OLSON** | |
| Chief, Special Litigation Division | Office of the Attorney General |
| | General Litigation Division |
| | P.O. Box 12548, Capitol Station |
| | Austin, Texas 78711-2548 |
| | Telephone: (512) 475-4196 |
| | Facsimile: (512) 320-0667 |

***ATTORNEYS FOR PLAINTIFF STATE OF TEXAS***

### CERTIFICATE OF SERVICE

I certify that that on July 14, 2023, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/Johnathan Stone*
**JOHNATHAN STONE**
*Attorney for Plaintiff*