# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

**STATE OF TEXAS**,

*Plaintiff,*

**v.**

**ALEJANDRO MAYORKAS, et al.,**

*Defendants.*

Case No. 6:23-cv-00001

Hon. Drew B. Tipton

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

## INTRODUCTION

Article III requires every plaintiff—including States—to "show an injury in fact caused by the defendant and redressable by a court order." *United States v. Texas*, 143 S. Ct. 1964, 2023 WL 4139000, at *4 (June 23, 2023). Defendants demonstrated in their motion-to-dismiss briefing that Texas has failed to make this showing. *See* Mot. to Dismiss, ECF No. 22 at 7-12; Reply in Supp. of Mot. to Dismiss, ECF No. 32 at 2-16. Since that briefing closed, the Supreme Court has decided several cases that confirm that Texas lacks standing here. *See Texas*, 2023 WL 4139000; *Haaland v. Brackeen*, 143 S. Ct. 1609 (June 15, 2023); *Dep't of Ed. v. Brown*, 143 S. Ct. 2343, 2023 WL 4277209 (June 30, 2023); *Biden v. Nebraska*, 143 S. Ct. 2355, 2023 WL 4277210 (June 30, 2023). Based on Defendants' prior arguments and these decisions, Texas's claims should be dismissed.

## DISCUSSION

### I.   *Texas* Confirms That The State Has Not Alleged A Cognizable Harm.

As detailed in Defendants' motion, Texas has failed to allege an injury in fact—the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Mot. at 7 (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up)). That failure is multi-faceted. Among other issues, Texas has no judicially cognizable interest in the enforcement of federal law against third parties here, *see id.* at 9 n.4 (citing *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984)), and it is speculative whether Texas will suffer the indirect financial costs that the 2022 Rule supposedly creates, *see id.* at 8-10. Both defects are fatal to Plaintiffs' standing, and granting the State "special solicitude" would not be appropriate or sufficient to

1

overcome these issues. *Texas* supports Defendants—not the State—on each point.

A.    *Texas* concerned two States' challenges to the Department of Homeland Security's "Guidelines for the Enforcement of Civil Immigration Law," which "prioritize[d] the arrest and removal from the United States of noncitizens who are suspected terrorists or dangerous criminals, or who have unlawfully entered the country only recently." 2023 WL 4139000 at *2. The States alleged that these guidelines would impose additional costs on Texas's detention system, public education services, and healthcare programs. *See Texas v. United States*, 606 F. Supp. 3d 437, 463-65 (S.D. Tex. 2022). The district court found that these financial costs, as well as harm to Texas's "quasi-sovereign interest in protecting its citizens from the criminal activity of aliens subject to mandatory detention under federal law," qualified as harms "to legally protected interests" and, thus, constituted injuries in fact. *Id.* at 467.

The Supreme Court reversed that judgment, holding that States do not have standing to ask federal courts to "order the Executive Branch to alter its arrest policies so as to make more arrests." *Texas*, 2023 WL 4139000 at *9. The Court noted that "the States ha[d] not cited any precedent, history, or tradition of courts ordering the Executive Branch to change its arrest or prosecution policies so that the Executive Branch makes more arrests or initiates more prosecutions." *Id.* at *4. The Court cited *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), for the proposition that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Texas*, 2023 WL 4139000 at *4. It noted that it had applied that principle "to challenges to the Executive Branch's exercise of enforcement discretion"

in other contexts, including immigration. *Id.* (citing, *inter alia*, *Sure-Tan*, 467 U.S. at 897)). And the Court determined that its "precedents and longstanding historical practice establish that the States' suit here is not the kind redressable by a federal court." *Id.* at *5.

In reaching this conclusion, the Court identified "good reasons" why "federal courts have not traditionally entertained lawsuits of this kind." *Id.* For instance, the Court recognized that Article II "assigns the 'executive Power' to the President," which includes the power "to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'" *Id.* Court interference with that authority would "entail expansive judicial direction of the Department's arrest policies" and potentially interfere with the separation of powers. *Id.* at *6. The Court recognized, moreover, that this risk is particularly pronounced in the immigration context, which "implicates not only 'normal domestic law enforcement priorities' but also 'foreign-policy objectives.'" *Id.* at *5.  And the Court observed, that if it "green-lighted this suit," it "could anticipate complaints in future years about alleged Executive Branch under-enforcement of any similarly worded laws," such as "drug laws, gun laws, obstruction of justice laws, or the like"—an "uncharted path" down which it would not go. *Id.* at *6.

The Court also reiterated that "federal courts must remain mindful of bedrock Article III constraints in cases brought by States against an executive agency or officer." *Id.* at *6 n.3. It acknowledged that "States sometimes have standing to sue the United States." *Id.* However, the Court stated that "in our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending," and "when a State asserts … that a federal law has produced only those kinds

3

of indirect effects, the State's claim for standing can become more attenuated." *Id.* (citing *Massachusetts v. Laird*, 400 U.S. 886 (1970); *Florida v. Mellon*, 273 U.S. 12, 16–18 (1927)). And in *Texas*, "none of the various theories of standing asserted by the States … over[came] the fundamental Article III problem with th[e] lawsuit." *Id.* Further, the Court rejected the States' claims for "special solicitude" under *Massachusetts v. EPA*, 549 U.S. 497 (2007), noting that that case involved a "challenge to the denial of a statutorily authorized petition for rulemaking, not a challenge to an exercise of the Executive's enforcement discretion." *Texas*, 2023 WL 4139000 at *8 n.6.

**B.**     *Texas* supports Defendants' pending motion to dismiss in three ways.

First, Texas' allegations of injury amount to (speculative) claims of derivative harm from purported under-enforcement of a ground for denying admission or adjustment of status to noncitizens.  But *Texas* establishes that, except in certain limited circumstances, which are not present here, *see id.* at *7-8, States do not have an underlying '"judicially cognizable interest in procuring enforcement of the immigration laws' by the Executive Branch," *id.* at *4 (quoting *Sure-Tan*, 467 U.S. at 897). So Texas's efforts to restate that injury as indirect costs should be no more successful than they were in *Texas*. *See id.* at *6 n.3.  Texas's suit here is "not the kind redressable by a federal court." *Id.* at *5.

Second, even if the claimed indirect costs are not just a means of restating an interest in procuring immigration enforcement, Texas's theory of standing based on such costs in this case is even more "attenuated" and speculative than the theories deemed insufficient in *Texas*. The Supreme Court made plain that when a State seeks to establish injury in fact based on "indirect effects on state revenues or state spending," its "claim

4

for standing can become more attenuated." *Id.* at *6 n.3. And in *Texas*, the Court concluded that "none of the various theories of standing asserted by the States in th[at] case overcomes the fundamental Article III problem with th[at] lawsuit." *Id.* Texas is trying to do the same thing here, except—unlike in *Texas*, where the district court found that Texas had incurred significant costs as a result of DHS's enforcement priorities, *see* 606 F. Supp. 3d at 463-65—the State has not alleged (and cannot allege) that it will spend a single dollar on Medicaid under the 2022 Rule that it would not have spent under the 2019 Rule. *See* Mot. at 8-10; Reply at 3-5. Under *Texas*, that is doubly fatal to its theory.

Third, Texas is wrong to invoke "special solicitude." Defendants explained that Texas is not eligible for "special solicitude" because it was "proceed[ing] on a theory of 'indirect fiscal burdens' from DHS's rule." Mot. at 7 n.3 (quoting *Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022); citing *La. ex rel. Landry v. Biden*, 64 F.4th 674, 683-84 (5th Cir. 2023)); *see* Reply at 15-16. The State argued to the contrary, *see* Pl.'s Opp to Mot. to Dismiss, ECF No. 25 at 3-4, but the Supreme Court stated that *Massachusetts* had no role in the standing analysis in *Texas*, 2023 WL 4139000, at *8 n.6; *see id.* at *10 (Gorsuch, J., concurring in judgment) ("lower courts should just leave that idea [special solicitude] on the shelf in future [cases]"). Because Texas alleges only indirect monetary injuries, special solicitude should likewise play no part here. And in any event the State's reliance on *Massachusetts'* softening of traceability and redressability cannot help establish injury. *See La. ex rel. Landry*, 64 F.4th at 683-84.

**II.   *Brackeen* Shows That Texas's Claims Lack Traceability And Redressability.**

Texas also lacks standing because it has not shown its alleged injuries are fairly

traceable to the 2022 Rule or redressable by a court order. *See* Mot. at 10-12; Reply at 8-14. In *Brackeen*, the Court addressed both of these standing prongs, and like *Texas*, that case shows how deficient the State's standing theory is here.

A.    In *Brackeen*, among other arguments, the Court considered equal-protection and nondelegation challenges to the Indian Child Welfare Act (ICWA) brought by Texas and individual plaintiffs—but rejected them on standing grounds. 143 S. Ct. at 1638-41.

Texas claimed it suffered "a direct pocketbook injury associated with the costs of keeping records, providing notice in involuntary proceedings, and producing expert testimony before moving a child to foster care or terminating parental rights" as a result of the ICWA. *Id.* at 1640. The Court concluded that these costs were "not 'fairly traceable' to the [ICWA's] placement preferences" because they '"operate[d] independently' of the provisions Texas identifie[d]." *Id.* "In other words," because "Texas would continue to incur the complained-of costs even if it were relieved of the duty to apply the placement preferences," there was not a sufficient causal connection between the expenditures and the challenged action. *Id.* at 1641. Texas thus lacked standing to assert these claims. *Id.*

The individual plaintiffs claimed that the ICWA put "them on 'unequal footing' with Indian parents who seek to adopt or foster an Indian child" in violation of the Equal Protection Clause, and they sought an injunction against federal officials. *Id.* at 1638-39 (cleaned up). The Court held that these plaintiffs failed to establish redressability because "state courts apply the placement preferences, and state agencies carry out the court-ordered placements"—not the federal parties who they sued. *Id.* at 1639. The State officials, the Court noted, were "nonparties who would not be bound by the judgment,"

and thus, "the equal protection issue would not be settled between petitioners and the officials who matter." *Id.* And the Court rejected an argument that a declaratory judgment would be sufficient given that, according to plaintiffs, "state courts are likely to defer to a federal court's interpretation of federal law." *Id.*; *see id.* ("[R]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in judgment))).

In his *Texas* concurrence, Justice Gorsuch, joined by Justices Thomas and Barrett, identified a similar flaw in Texas's theory of standing in that case. *See* 2023 WL 4139000, at *11-12 (Gorsuch, J., concurring in judgment). He recognized that "[a] judicial decree rendering the Guidelines a nullity does nothing to change the fact that federal officials possess the same underlying prosecutorial discretion" and that "such a decree [does not] require federal officials to change how they exercise that discretion in the Guidelines' absence." *Id.* at *11. Texas would thus be unable to show "that its injuries are capable of being remedied 'by a favorable decision.'" *Id.* The same is true with Texas's claims here; if the 2022 Rule were vacated, DHS officials would apply the substantively similar 1999 Field Guidance or be free to exercise their discretion in similar ways. *See* Mot. at 11.

**B.**     *Brackeen* supports Defendants' traceability and redressability arguments.

First, Texas's supposed pocketbook injuries here—like those it asserted in *Brackeen*—are not fairly traceable to the federal action being challenged. *See* Mot. at 11; Reply at 10-11. The 2022 Rule does not require Texas to spend any money or provide

benefits to any individual; indeed, it expressly states that it "does not change eligibility for public benefits." 87 FR 55,472, 55,492 (Sept. 9, 2022). Rather, as Defendants explained in their reply, federal and State public benefits laws, including Medicaid—not the 2022 Rule—are the cause of any expenditures. *See* Reply at 10-11. Under *Brackeen*, that disconnect defeats a claim for standing because Texas "would continue to incur the complained-of costs even if" the 2022 Rule were vacated. 143 S. Ct. at 1641.

Second, Texas has a redressability problem because even if it were to receive its requested relief, "the officials who matter" would be able to continue acting as before. *Id.* at 1639. Texas seeks vacatur of the 2022 Rule in this case, but if the Court granted that relief, the 1999 Field Guidance (which is unchallenged yet allegedly has the same flaws as the 2022 Rule) would govern DHS officials' public-charge determinations or those officials would be able to exercise their discretion freely. Neither outcome suggests that Texas would see any decrease in Medicaid expenditures—which, in any event, are administered by different officials pursuant to different statutory and regulatory requirements and guidelines—in some distant future when noncitizens not deemed likely to become public charges may finally become eligible for public benefits. Nor would reinstating the 2019 Rule solve Texas's alleged problem given that no one was ultimately denied adjustment of status during the time that that rule was in place and the discretion DHS officials maintain under it. In short, the court order Texas seeks will not remedy its supposed injury, and thus, under *Brackeen*, Texas lacks standing.

### III.     *Brown* and *Nebraska* Highlight The Deficiencies In The State's Claims.

Finally, the Court's recent decisions in two cases concerning the cancellation of

student loan debt doom Texas's claims here. In *Brown*, the Court held that individual plaintiffs did not have standing because their supposed injuries were not fairly traceable to the challenged actions. 2023 WL 4277209, at *7-9. In *Nebraska*, the Court concluded that certain States had standing to challenge the loan cancellation program because it imposed certain costs directly on a state instrumentality. 2023 WL 4277210, at *6-8. While factually distinct, both show how far Texas is from stating a valid theory of standing here.

**A.** The *Brown* plaintiffs claimed that they were injured by not receiving loan relief (which they allegedly would have received if debt had been canceled under a particular statute) when the Secretary of Education canceled debt under a different statute. 2023 WL 4277209 at *7. The Court recognized that this theory presented injury-in-fact and redressability issues, *id.*, but it ultimately held that the plaintiffs' theory faltered most clearly for lack of traceability, *id.* The plaintiffs offered no evidence that the Secretary's decision to proceed under one statute had any impact on his decision *not* to proceed under another—now or in the future. *Id.* And the Court found no precedent for such an approach and, therefore, concluded that there was no standing.

Texas's claims here have a similar disconnect. As noted above (at 8), the causes of any expenditures on public benefits are the federal or State laws setting benefits eligibility—not the 2022 Rule. Those provisions "function independently of each other," *id.* at *8, and the 2022 Rule has no bearing on how Congress or Texas determines benefits eligibility. Texas's claims should thus fail as the individual borrowers' claims did.

**B.** In *Nebraska*, the Court determined that a nonprofit Missouri government corporation—MOHELA—was harmed by the Secretary's cancellation of student debt

9

because it would no longer receive fees for servicing certain accounts. *See* 2023 WL 4277210, at *6. That case thus involved a direct and concrete cost that Missouri alleged it would bear stemming from the cessation of payments from the federal government to its instrumentality, MOHELA—unlike Texas's suit here. *Nebraska* provides no support for the attenuated standing theory based on speculative indirect costs.

## CONCLUSION

For the foregoing reasons and those in Defendants' prior briefing, Texas's claims should be dismissed for lack of subject matter jurisdiction.

Dated: July 14, 2023                    Respectfully submitted,

ALAMDAR HAMDANI                   BRIAN M. BOYNTON
United States Attorney                   Principal Deputy Assistant Attorney General

Lance Duke                               BRIGHAM J. BOWEN
Assistant United States Attorney         Assistant Branch Director
Southern District of Texas
800 N. Shoreline Blvd., Ste. 500         */s/ Christopher A. Eiswerth*
Tel: (361) 446-2890                      Alexander V. Sverdlov (N.Y. Bar No. 4918793)
Fax: (361) 888-3200                      Attorney-in-Charge / Admitted Pro Hac Vice
lance.duke@usdoj.gov                     Christopher A. Eiswerth (D.C. Bar 1029490)
                                         Admitted Pro Hac Vice
                                         Trial Attorneys
                                         U.S. Department of Justice
                                         Federal Programs Branch, Civil Division
                                         1100 L St., N.W.
                                         Washington, D.C. 20005
                                         Tel: (202) 305-8550 / Fax: (202) 616-8460
                                         alexander.v.sverdlov@usdoj.gov
                                         christopher.a.eiswerth@usdoj.gov

                                         *Counsel for Defendants*